*CAROSELLA & FERRY, P.C.*
JAMES J. MUNNIS, ESQUIRE
ATTORNEY I.D. NO. 69691
882 S. Matlack St., Suite 101
West Chester, PA 19382                          Attorney for Plaintiff,
610-431-3300                                         David Howard

---

| | | |
|---|---|---|
| DAVID HOWARD, | : | IN THE UNITED STATES DISTRICT |
| | : | COURT FOR THE EASTERN DISTRICT |
| Plaintiff, | : | OF PENNSYLVANIA |
| vs. | : | |
| | : | |
| JOHN E. POTTER, | : | CIVIL ACTION |
| POSTMASTER GENERAL, | : | |
| | : | |
| Defendant. | : | NO. 02-CV-3797 |

---

**PLAINTIFF'S REPLY TO DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS COUNT II**

In Defendant's Reply to Plaintiff's Opposition to Defendant's Renewed Motion to Dismiss Count II, Defendant makes several statements and claims which, with new information received from the National Labor Relations Board, prove that Defendant's allegations and comments are incorrect, without merit, and outright lies. It is true that the Supreme Court in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 162-63 (1983) held that to sue the employer or the union or both under the collective bargaining agreement, the plaintiff employee must prove the same case, i.e. (1) that the union breached its duty of fair representation **and** (2) that the employer breached the collective bargaining agreement. Quite simply, both (1) and (2) have occurred in this case at bar.

Defendant once again attempts to muddy the waters by stating that Plaintiff is confused about documents. On Page 3 of Defendant's Reply, Defendant states that "Plaintiff's comment

-1-

in his Opposition Memorandum at [page] five that Plaintiff and his counsel were unaware of the grievance settlement reference in Exhibit J is unsupported by any verified complaint or affidavit." On Pages 3 and 4, Defendant goes on further to state "[Plaintiff] did not allege in his complaint that the union unfairly represented him by entering into a grievance settlement without notifying him." It should be pointed out that information received by Plaintiff from the National Labor Relations Board includes a pre-arbitration settlement agreement which states, "the union, on behalf of the Grievant, David Howard, agreed that the disposition in EEOC Complaint No. ███X, Agency Case No. 1C, 1950023-98 would be applied to the case at issue."

It should also be pointed out that, while both a management representative and a union representative signed the settlement agreement, it is dated May 2, 2002. This agreement, which was entered into by the union and U.S. postal service management was done after the EEOC hearing which was on April 12, 2001, and the decision, which was on March 5, 2002. There was never any documentation about this so-called "agreement" between the postal service and the union **prior to** the decision.

It should also be pointed out that this was entered into after Mr. Howard was cleared by his doctors to return to work without restrictions.

While it may be true that the collective bargaining agreement provides that the union has the right and authority anytime to settle a grievance, in whole or in part, with or without the consent of the employee, it is without question improper to enter into an agreement to accept the EEOC's decision in the matter and enter into this agreement only **<u>after</u>** the EEOC decision has been reached. A copy of the pre-arbitration settlement agreement is attached herein as Exhibit "A".

Defendant further attempts to quote certain sections of the collective bargaining agreement. Defendant, however, fails to cite the following Articles: Article 5, Prohibition of Unilateral Action, which states that "the employer will not take any actions affecting wages, hours, and other terms and conditions of employment as defined in Section 8(d) of the National Labor Relations Act which violate the terms of this agreement..."; Article 6, Layoff and Reduction in Force, which was certainly not followed in the attempted termination of Mr. Howard; Article 13.4D, which discusses the reassignment of a full time regular to a light duty temporary or permanent assignment; Section 13.3C, which states that the number of light duty assignments that may be reserved for temporary or permanent light duty assignments be consistent with good business practices and shall be determined by past experienced to ensure that no assigned full time regular employee will be aversely affected; Section 15.3, Grievance Procedure - General; and Article 16, Disciplinary Procedure, which was not followed in the attempted termination of Mr. Howard.

Quite simply, the union followed none of the above-referenced sections in its so-called representation of Mr. Howard, nor did the postal service follow these sections in its dealings with Mr. Howard or his counsel. Mr. Howard was replaced by supplemental work force, Mr. Howard's grievances were ignored, and neither Mr. Howard nor his counsel even knew about the union's so-called settlement agreement until the first quarter of 2004, when documentation from the National Labor Relations Board was received. The union and the Postal Service continued their misstatements and erroneous information in letters to Congressman Joseph R. Pitts, in which they stated that a grievance is pending for Mr. Howard (see April 11, 2002 letter, attached hereto as Exhibit "B") and that the grievance settlement stated that the decision would be applied

to Mr. Howard's EEO case (see July 15, 2002 letter, attached hereto as Exhibit "C"). Once again, this letter was written long after the actual EEOC hearing and decision.

A December 9, 2002 letter from Rick Vanerra, Union Branch President, to Frank Phillips, local president, again contains misstatements and improper representation. Vanerra starts by stating, in an extremely vindictive manner, that Howard's grievances pertaining to light duty due to his drug dependancy, which only permitted him to work during the day shift "*due to his pathetic excuse* that he could only make Narcotics Anonymous meetings during these hours, which is totally unfounded" (emphasis added). Vanerra goes on to say that Mr. Howard was a most junior employee. This also is incorrect. Further, "the local president made an agreement prior to the EEOC hearing due to the fact that his grievance mirrored his EEOC appeal...". This also is incorrect as the first documentation for the so-called agreement between the union and the postal service was done after the EEOC decision. Vanerra goes on to state that Howard was "very loud, violent and charged local president Mr. Frank Phillips" at a branch union meeting and "...was escorted out of the meeting by the local police department, who removed him from the premises". This is another misstatement and lie, as review of the police records show that Howard was the individual who contacted the police department, and was not charged with any offense. A true and correct copy of Mr. Vanerra's December 9th letter is attached hereto as Exhibit "D".

## CONCLUSION

All of the above, including all new information received during the first quarter of 2004, continue to show the postal service and the union continue to "play fast and loose" with facts to meet its needs as the situation arises. Agreements entered into after the EEOC hearing was

reached, conflicting letters sent to Congressman Joseph Pitts, and selective citings of the collective bargaining agreement on the part of the union and the postal service, while ignoring significant other sections, all show that the union has breached its duty of fair representation for Mr. Howard and that the postal service breached the collective bargaining agreement. Quite simply, the union, in representing Howard in the grievance procedure, has acted in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In fact, the union's conduct in this matter was so far outside a wide range of reasonableness, as to be considered irrational. As a result, Plaintiff's Complaint gives rise to a claim for Breach of Contract as well as Wrongful Discharge, and Defendant's Motion to Dismiss Count II of Plaintiff's Complaint should be denied.

|  |  |
|---|---|
| | Respectfully submitted, |
| | ***CAROSELLA & FERRY, P.C.*** |
| | By: |
| *Date:*_____ | _____ |
| | JAMES J. MUNNIS, ESQUIRE |
| | ATTORNEY ID NO. 69691 |
| | CAROSELLA & FERRY, P.C. |
| | 882 SOUTH MATLACK STREET, SUITE 101 |
| | WEST CHESTER, PA 19382-4505 |
| | 610-431-3300 TELEPHONE |
| | 610-431-6363 FACSIMILE |