**CAROSELLA & FERRY, P.C.**
JAMES J. MUNNIS, ESQUIRE
ATTORNEY I.D. NO. 69691
882 S. Matlack St., Suite 101
West Chester, PA 19382                                  Attorney for Plaintiff,
610-431-3300                                            David Howard

---

| | | |
|---|---|---|
| DAVID HOWARD | : | IN THE UNITED STATES DISTRICT |
| | : | COURT FOR THE EASTERN DISTRICT |
| Plaintiff, | : | OF PENNSYLVANIA |
| vs. | : | |
| | : | |
| JOHN E. POTTER, | : | CIVIL ACTION |
| POSTMASTER GENERAL, | : | |
| | : | |
| Defendant. | : | NO. 02-CV-3797 |

---

## SECOND AMENDED COMPLAINT - IN ITS ENTIRETY

Plaintiff, David A. Howard ("Howard"), brings the following Complaint against John E. Potter, Postmaster General, U.S. Postal Service ("Postal Service") and avers as follows:

1.    This is an action against the Postal Service for wrongful discharge and breach of contract of Howard.

2.    Howard is an individual and a resident of Exton, Pennsylvania.

3.    The Postal Service is a federal agency with an office for service of process at 1000 West Valley Road, Southeastern, Pennsylvania 19399.

## COUNT I - WRONGFUL DISCHARGE

4.    The Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, *et seq.* ("Rehabilitation Act") is applicable to federal employers and employers who receive federal funding.

5.    The Postal Service is subject to the Rehabilitation Act.

6.    Howard is a disabled person within the meaning of the Rehabilitation Act in that he had a disability - severe depression.

7. This severe depression was due to Howard's alcohol and drug dependency for which he voluntarily sought treatment.

8. As per Article 35 of the Agreement between the National Mail Handlers' Union and the United States Postal Service (hereinafter, the "Agreement"), Section 1B of that article states that "...an employee's voluntary participation in such programs will be considered favorably in disciplinary action proceedings."

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. This cause of action of Howard's Complaint arises under 29 U.S.C. § 701, *et seq.*

10. On March 1, 2002, the United States Equal Employment Opportunity Commission ("EEOC") issued an Order of Judgment after a hearing on April 12, 2001.

11. On or about March 19, 2002, the agency issued a Notice of Final Action in accordance with 29 C.F.R. Part 1514.10(a). A copy of the Notice of Final Action is attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "A".

12. Howard had filed suit within ninety (90) days of his receipt of the Notice of Final Action.

13. Venue is proper pursuant to 20 U.S.C. § 1391(a). This is the Judicial District where a substantial part of the events or omissions giving rise to the Claim occurred.

14. Howard began his employment with the Postal Service on December 31, 1988. He was employed initially as a clerk, and later as a full-time, non-probationary mail handler assigned to the Southeastern Processing and Distribution Center in Devon, Pennsylvania.

15. In 1996, Howard voluntarily sought help for drug and alcohol addiction as per Article 35 of the Agreement

16. After a ten (10) day program which began on or about September 4, 1996 and which included a three (3) month aftercare program, Howard returned to work on September 14, 1996 on his normal night shift.

17. On or about October 1, 1996, Howard verbally requested, and was granted, a

revised schedule which was based on an agreement with his manager that Howard could work day shift as long as he provided medical documentation indicating the necessity for such.

18. Howard consistently provided the Postal Service with all medical documentation requested by it.

19. Howard was diagnosed as suffering from major depression. During January and February of 1997, Howard's psychiatrists recommended that Howard only work day shift during his recovery period in order to maintain his evening rehabilitation meetings and to stay on the schedule he had been on when his recovery began. The initial period was listed by the doctor as "indefinitely for at least six (6) months."

20. In May of 1997, the Postal Service informed Howard that he could no longer work day shift.

21. Howard immediately provided medial documentation which indicated that he was not ready to return to the night shift.

22. On or about January 21, 1998, Postal Service manager Frank J. Ranieri ("Ranieri") sent a letter to Howard acknowledging receipt of medical documentation dated December 18, 1997. Ranieri misread this documentation to cite restrictions of no more than forty (40) hours per week, day shift. Ranieri was in error, as the December 19, 1997 letter from Margaret DeRentiis, M.A., Licensed Psychologist, to Ranieri stated that "he [David Howard] is able to return to full-time duties on day shift." A true and correct copy of the aforementioned letter is attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "B".

23. Ranieri requested additional medical documentation to explain Howard's limitations. Five (5) days later, on January 26, 1998, Howard forwarded a note from his psychiatrist, Dr. Etezady, recommending that Howard work only day shift hours. Dr. Etezady's note indicated that Howard "...will be able to work forty (40) hours per week. This work needs to be day shift only with no changes in his schedule." A true and correct copy of the note from Dr. Etezady is attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "C".

24. A person is considered a full-time employee by the Postal Service when he works forty (40) hours per week.

25. Additionally, on Janary 26, 1998, because of the Postal Service's: (a) continued request for medical documentation, (b) refusal to accept the documentation which was consistently provided, and (c) refusal to allow Howard additional temporary light duty in spite of the medical documentation requesting it, Howard submitted a Request For Light Duty Form and inserted the word "permanent" in the heading.

26. On February 5, 1998, the Postal Service forwarded a letter to Howard stating his options which consisted of: (a) voluntarily changing to another craft, (b) applying for disability retirement, or (c) resigning. A true and correct copy of the February 5, 1998 letter is attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "D".

27. On February 13, 1998, Howard sent a letter to Ranieri requesting the reasonable accommodation of day shift. A true and correct copy of the February 13, 1998 letter is attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "E".

28. Subsequent to this letter, Howard continued to forward medical documentation to the Postal Service indicating that he was able to perform the duties of his position so long as the accommodation of day shift was provided. On July 1, 1998, the Postal Service forwarded a notice to Howard stating that "...medical documentation is insufficient to support your request for light duty."

29. On July 27, 1998, Dr. Etezady forwarded a note to the Postal Service stating that Howard was able to return to work full-time, day shift only. Dr. Etezady's note stated, "...please note that unless Mr. Howard works day shift, his treatment and present state of stability will be at risk." A true and correct copy of the July 27, 1998 note is attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "F".

30. Howard was forced to engage the services of legal counsel to attempt to return to work. Howard's counsel forwarded letters to Postal Service General Manager Jeffrey Bergen, and Postal Service Labor Relations Representative Felicia Adamski, in an attempt to return Mr.

Howard to work.  The Postal Service failed to respond to these letters.  True and correct copies of Howard's counsel's October 29, 1998 letter to Mr. Jeffrey Bergen and September 8, 1999 and October 14, 1999 letters to Ms. Felicia Adamski are attached hereto, incorporated herein, and made a part hereof, marked as Exhibits "G" and "H", respectively.

31. The fact that Howard was working day shift illustrates that he was otherwise qualified to perform the essential functions of the job with the reasonable accommodation of day shift.

32. In an action against the Postal Service concerning disability discrimination under the Rehabilitation Act, case law is clear that the Postal Service shall consider the option of job reassignment as a reasonable accommodation before determining that an employee is not otherwise qualified for employment with the Postal Service.

33. During the EEOC hearing, evidence was presented by witnesses that there were vacant and funded employment positions whose essential duties Howard was capable of performing at a level equivalent with his former position.

34. During the EEOC hearing testimony, specific employment positions were identified that the Postal Service should have considered for the reassignment of Howard.

35. During the entire course of this matter, casual, part-time employees were filling day shift positions.  As such, it has been properly shown that such positions did indeed exist, and that Howard properly applied for the reassignment.  Once again, it should be noted that Howard was a full-time, non-probationary employee.

36. Pursuant to a 1992 amendment, the Rehabilitation Act states that employers shall offer to reassign non-probationary employees if those employees become unable to perform the essential functions of their jobs.

37. The use of the word "shall" indicates that this reassignment offer is mandatory.

38. In spite of repeated attempts by Howard for reassignment, and in spite of the Postal Service's responsibility to reassign Howard, the Postal Service continued to fail to respond to Howard's requests for reassignment.

39. On August 30, 1999, upon request from the Postal Service Labor Relations Specialist, a note from Dr. Etezady stated that "Mr. Howard will be able to return to work beginning Wednesday, September 1, 1999." In this note, Dr. Etezady listed no restrictions, including no further requirement for day shift. A true and correct copy of Dr. Etezady's note is attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "I".

40. In spite of Dr. Etezady's note and all other medical documentation submitted, the Postal Service still refused to return Howard to work.

41. Howard has never actually been terminated by the Postal Service. A copy of a Notice of Personnel Action was received by Howard on or about July 11, 2002, and is attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "J".

42. This Notice of Personnel Action describes the action as "Separation Disability".

43. Prior to his Separation Disability, Howard was an employee of the Postal Service pursuant to the Rehabilitation Act.

44. During his period of employment with the Postal Service, Howard's employment record was exemplary.

45. Upon information and belief, other similarly situated employees have been afforded disparate treatment than the treatment afforded Howard in that they have been allowed to assume other duties or work on other shifts, being afforded reasonable accommodation because of medical restrictions arising from a medical condition or injury without being forced to leave the Postal Service's employ.

46. As a result of the Postal Service's actions, Howard has been caused to suffer damages of a sum in excess of Three Hundred Thousand Dollars ($300,000.00).

47. Pursuant to the Rehabilitation Act, Howard is entitled to reinstatement of his position as a mail handler, in addition to back pay, attorneys' fees, experts' fees, and punitive damages for the prosecution of this action and for his damages and costs.

48. Howard has shown that he has a disability; he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the Postal

Service, and that he was nonetheless terminated or otherwise prevented from performing his job. Howard has met the prerequisite for filing suit under the Rehabilitation Act.

49. Howard has exhausted all required administrative remedies for bringing a claim for judicial relief.

50. Howard has been damaged by the Postal Service's violation and wrongful termination inasmuch as he:

1. has been effectively without a job since May of 1997;

2. has been denied access to certain benefits to which he was entitled under the Postal Service's Employment Benefit Plan; and

3. the aforesaid acts by the Postal Service have discriminated against Howard as a qualified individual with a disability by:

    (a) limiting Howard to and classifying him as disabled, adversely affecting his job opportunities and status because of his perceived disability;

    (b) utilizing standards and criteria of administration in designation and classification that discriminate against Howard on the basis of the disability or perceived disability; and

    (c) refusing Howard a reasonable accommodation to the known physical and mental limitation of Howard which was merely to provide day shift to Howard for some finite period of time, as per the recommendation of medical specialists.

WHEREFORE, Plaintiff, David A. Howard, requests that judgment be entered in his favor in an amount to be determined at trial encompassing back pay, attorneys' fees, experts' fees, costs, and other such amounts as the Court deems appropriate, including punitive damages. In addition, Plaintiff, David A. Howard, requests that this Court order the Postal Service to reinstate him to his former position with all benefits to which he is entitled, together with other such relief as the Court may determine.

## COUNT II - BREACH OF CONTRACT

51. Howard incorporates Paragraphs 1 through 50 as if fully set forth herein.

52. While employed with the Postal Service, Howard was represented by the National Postal Mail Handlers' Union (hereinafter, the "Union").

53. Article 13 of the Agreement discusses assignment of Ill or Injured Regular Work Force Employees:

> Temporary Reassignment
>
> Every effort shall be made to reassign the concerned employee within the employee's present craft or occupational group, even if such assignment reduces the number of hours of work from the supplemental work force. After all efforts are exhausted in this area, consideration will be given to reassignment to another craft or occupational group within the same installation.

54. Concerning Howard, although he requested reassignment due to his illness, major depression, the Postal Service refused to move Howard to day shift or to adjust any supplemental work force.

55. Howard's request for day shift was confirmed in doctors' notes to the Postal Service and was for medical necessity. Article 13, Section 4D of the Agreement states:

> The reassignment of a full-time regular or part-time flexible employee under the provisions of this Article to an agreed-upon light duty temporary or permanent or other assignment within the office, such as type of assignment, area of assignment, hours of duty, etc., **will** be the decision of the installation head who will be guided by the examining physician's report, employee's ability to reach the place of employment and ability to perform the duties involved.

56. During January and February of 1997, Howard's psychiatrists recommended that Howard work only day shift during his recovery period in order to maintain his evening rehabilitation meetings and to stay on the schedule that he had been on when his recovery began. The initial period was listed by the doctor as, "indefinitely for at least six (6) months."

57. In May of 1997, the Postal Service arbitrarily informed Howard that he could no longer work day shift.

58. In 1996, David Howard, then an eight-year employee of the Postal Service, had voluntarily sought help for drug addiction, as per Article 35 of the Agreement.

59. Article 35 of the Agreement states in part that "...the Employer and the Union express strong support for programs of self-help" (see § 35.1A), and further states that "...an employee's voluntary participation in such programs will be considered favorably in disciplinary action proceedings." (See § 35.1B).

60. Article 13, Section 1B of the Agreement states:

> The U.S. Postal Service and the Union, recognizing their responsibility to aid and assist deserving full-time regular or part-time flexible employees who, through illness or injury, are unable to perform their regularly assigned duties, agree to the following provisions and conditions for reassignment to temporary or permanent light duty or other assignments:
>
> Section 13.2 - <u>Employee's Request for Reassignment</u>
>
> A.   Temporary Reassignment
>
> Any full-time regular or part-time flexible employee recuperating from a serious illness or injury and temporarily unable to perform the assigned duties may voluntarily submit a written request to the installation head for temporary assignment for light duty or other assignment. The request shall be supported by a medical statement from a licensed physician or by a written statement from a licensed chiropractor stating, when possible, the anticipated duration of the convalescence.

61. Mr. Howard provided medical documentation showing that, while the duration could not be quantified, it was temporary and that he was, in fact, improving.

62. Mr. Howard provided all medical documentation when requested by the Postal Service.

63. Article 13, Section 2C of the Agreement states:

> Installation heads shall show the greatest consideration for full-time regular or part-time flexible employees requiring light duty or other assignments, giving each request careful attention, and reassign such employees to the extent possible in the employee's office. When a request is refused, the installation head shall notify the concerned employee in writing, stating the reasons for the inability to reassign the employee.

64. The Postal Service stated that they were unable to accommodate Howard due to "undue hardship".

65. The Postal Service's claim of undue hardship was not factual, but was merely a pretext for actual discrimination on the part of the Postal Service against Howard.

66. In spite of Howard having submitted medical documentation - documentation stating that he could return to work with no restrictions, including his original shift - the Postal Service has refused to return Howard to work.

67. When refusing to return Howard to work, the Postal Service stated that they were no longer allowing Howard to work a "revised schedule". True and correct copies of Postal Service letters to Howard discussing "revised schedule" are attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "K".

68. Howard's working the day shift was not a "revised schedule" for personal convenience, as stated by the Postal Service, but was "light duty" for medical necessity, as the medical records submitted so state. The terms "revised schedule" and "light duty" differ as per the Agreement.

69. The Postal Service knew Howard was on "light duty" and not a "revised schedule". A true and correct copy of a February 12, 1997 letter from Ranieri to Howard discussing Howard's "light duty" is attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "L".

70. The Postal Service was wrong in stating that Howard was on day shift for personal convenience and improperly removed Howard from day shift in spite of the medical

records submitted by Howard.

71. When Howard informed the Postal Service that he was not on a "revised schedule," the Postal Service ignored Howard and retaliated against him by wrongfully terminating his light duty, contrary to the medical documentation submitted.

72. The Postal Service failed to admit that Howard was on light duty until over four (4) years later, during the EEOC hearing.

73. The Postal Service consistently ignored the fact that Howard was on "light duty" for medical necessity.

74. Termination of Howard was erroneous and retaliatory on the part of the Postal Service.

75. Although Howard was a valid member of the Union during this period, the Union breached its duty of fair representation to Howard and represented him in a manner that was discriminatory, dishonest, arbitrary, or perfunctory.

76. Despite grievances which were filed by Howard as early as in the year 1997, the Union failed to proceed in any manner in these grievances, and this inaction showed that the Union acted in a discriminatory, dishonest, arbitrary, perfunctory, or bad-faith manner toward Howard.

77. This inaction on the part of the Union forced Howard to hire counsel in a good-faith attempt to return to work.

78. Based on the Union's inaction in its representation (or lack thereof) of Howard, the Postal Service issued a Notification of Personnel Action to Howard on or about May 23, 2002 for Action Code 326, "Separation Disability".

79. This notification was immediately followed by a second Notification of Personnel Action issued on or about May 29, 2002 for Action Code 150, "Reactivate", with a comment underneath stating, "Cancels NOA 326 Effective 2002-05-02."  True and correct copies of the aforementioned notices [hereinafter, the "Notice(s)"] are attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "M".

80. The Notices were received by Howard on or about July 11, 2002. They apparently separate him and then reinstate him within a six (6) day period.

81. The May 23, 2002 Notice apparently lists a grievance settlement which neither Howard, Howard's counsel, nor the EEOC Judge for that matter, apparently were aware.

82. It should be noted that these Notices were received by Howard on or about July 11, 2002, which was eight (8) days after service of the original Complaint in this matter.

83. Congressman Joseph Pitts attempted to intervene on behalf of Howard and the Postal Service sent a letter to Congressman Pitts assuring him that, "Mr. Howard's grievance is pending..." and "...the order in which grievances are heard in arbitration is mutually decided by the union and management and usually occurs on a first-appealed, first-heard basis." A true and correct copy of this letter is attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "N".

84. In spite of the assurances made to Congressman Pitts, due to the Union's inaction in its representation of Howard, as of this date, the grievances have never been heard and, according the correspondence to Howard from both the Postal Service and the Union, his grievances are considered "closed."

85. The Union has stated that it was pursuing Howard's grievance to "Step Four" which is the last step of the Union Grievance Procedure. It must be pointed out that this "Step Four" process was never held, and there has been no change in the status of the grievance since 1998.

86. The Union unfairly represented Howard by allegedly entering into a grievance settlement without notifying Howard.

87. Information received by Howard from the National Labor Relations Board includes a pre-arbitration settlement agreement which states, "the Union, on behalf of the Grievant, David Howard, agreed that the disposition in EEOC Complaint Number 17-98-8149X, Agency Case Number 1C, 1950023-98, would be applied to the case at issue." A true and correct copy of the National Labor Relations Board documentation is attached hereto, incorporated

herein, and made a part hereof, marked as Exhibit "O".

88.     While both a Postal Service management representative and a Union representative signed the settlement agreement, it is dated May 2, 2002. As a result, this agreement was entered into **after** the EEOC hearing, which has held on April 12, 2001, as well as the decision, which was made on March 5, 2002.

89.     There was never any documentation about this so-called "agreement" between the Postal Service and the Union **prior to** the decision.

90.     The Postal Service and the Union improperly entered into an agreement to accept the EEOC's decision only **after** the EEOC decision had been reached. It is without question improper to enter into an agreement in such a manner, and this once again illustrates the discriminatory, dishonest, arbitrary, or perfunctory representation of Howard by the Union.

91.     Additionally, this agreement was entered into after Howard was cleared by his doctors to return to work without restrictions.

92.     The Union failed to properly represent Howard's interests in many relevant sections of the Collective Bargaining Agreement that it had with the Postal Service. Specifically noted are the following:

> (a)     Article 5, Prohibition of Unilateral Action, states that "the employer will not take any actions affecting wages, hours, and other terms and conditions of employment as defined in Section 8(d) of the National Labor Relations Act which violate the terms of this agreement..."
>
> (b)     Article 6, Layoff and Reduction in Force, which was not followed in the attempted termination of Howard;
>
> (c)     Article 13.4D, which discusses the reassignment of a full-time regular to a light-duty temporary or permanent assignment;
>
> (d)     Section 13.3C, which states that the number of light duty assignments that may be reserved for temporary or permanent light duty assignments be consistent with good business practices and shall be determined by past

         experience to ensure that no assigned full-time regular employee will be adversely affected; and

   (e)    Section 15.3, Grievance Procedure - General, and Article 16, Disciplinary Procedure, neither of which were followed in the attempted termination of Howard.

93.    It is obvious that the Union followed none of the above-referenced sections in its so-called representation of Howard, nor did the Postal Service or the Union follow these sections in their dealings with Howard or his counsel.

94.    Howard was replaced by supplemental work force, his grievances were ignored, and neither he nor his counsel even knew about the Union's so-called settlement agreement until the first quarter of 2004, when documentation from the National Labor Relations Board was received.

95.    The Union continued its improper representation and the Postal Service continued its misstatements and erroneous information in letters to Congressman Joseph R. Pitts in which they stated that a grievance was "pending" for Howard (see Exhibit "N") and that the grievance settlement stated that the decision would be applied to Howard's EEOC case in their July 15, 2002 letter, attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "P".

96.    Once again, this letter was written long after the actual EEOC hearing and decision.

97.    Mr. Rick Vanerra, Union Branch President ("Vanerra"), sent a letter to Mr. Frank Phillips, Local Union President ("Phillips") on December 9, 2002, containing misstatements and improper representation. In that letter, Vanerra states, in an extremely vindictive manner, that Howard's grievances pertaining to light duty due to his drug dependency, which only permitted him to work day shift were *"...due to his pathetic excuse* that he could only make Narcotics Anonymous meetings during these hours, which is totally unfounded." (Emphasis added.)

98.    Vanerra goes on to say that "...Howard was a <u>most junior employee</u>." This statement is also incorrect. A true and correct copy of Vanerra's December 9, 2002 letter is attached hereto, incorporated herein, and made a part hereof, marked as Exhibit "Q".

99.    Vanerra's letter again shows the Union's improper representation of Howard which

was discriminatory, dishonest, arbitrary, or perfunctory in nature.

100. The Postal Service's testimony has consistently changed to suit its interests. The Postal Service claims that Howard is not disabled, yet has separated him for "disability" as per the Notification of Personnel Action received by Howard in July of 2002. (See Exhibit "M").

101. This Notification of Personnel Action was the first notice Howard ever received as to his actual separation from the Postal Service. This "Separation Disability" received in July of 2002 by Howard is untimely, improper, and retaliatory on the part of the Postal Service.

102. Prior to having received the Notification of Personnel Action, Howard, on several occasions, tried to return to work with no restrictions, but the Postal Service failed to even discuss the matter with him.

WHEREFORE, Plaintiff, David A. Howard, requests that judgment be entered in his favor in an amount to be determined at trial encompassing back pay, attorneys' fees, experts' fees, costs, and such other amounts as the Court deems appropriate, including punitive damages. In addition, Plaintiff, David A. Howard, requests this Court to order the Postal Service to reinstate him to his former position with all benefits to which he is entitled, together with other such relief as the Court may determine.

*Respectfully submitted,*

***CAROSELLA & FERRY, P.C.***
By:

*Date:*_____   _____
JAMES J. MUNNIS, ESQUIRE
Attorney for David Howard, Plaintiff