IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID HOWARD,                          :
                                       :
                    Plaintiff,         :        C.A. No. 02-3797
                                       :
        v.                             :
                                       :
UNITED STATES POSTAL SERVICE,          :
                                       :
                    Defendant.         :

## **ORDER**

AND NOW on this _____ day of _____, 2005, upon consideration of

Defendant United States Postal Service's Motion for Summary Judgment, and plaintiff's

response thereto, it is hereby ORDERED that defendant's motion is GRANTED and judgment is

entered in favor of defendant under Federal Rule of Civil Procedure 56(c) for the reasons set

forth in defendant's memorandum of law and incorporated herein by reference.


                                       _____
                                       U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID HOWARD,                         :
                                      :
                   Plaintiff,         :       C.A. No. 02-3797
                                      :
            v.                        :
                                      :
UNITED STATES POSTAL SERVICE,         :
                                      :
                   Defendant.         :

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant United States Postal Service respectfully requests the Court to grant summary

judgment in favor of defendant under Federal Rule of Civil Procedure 56(c).  The undisputed

facts demonstrate that defendant did not discriminate against plaintiff on the basis of disability

and defendant and plaintiff's labor union did not breach their collective bargaining agreement.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


_____

VIRGINIA A. GIBSON
Assistant United States Attorney
Chief, Civil Division


_____

BARBARA ROWLAND
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia PA 19106-4476
(215) 861-8311 Telephone
(215) 861-8349 Facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID HOWARD,                        :
                                     :
                    Plaintiff,       :    C.A. No. 02-3797
                                     :
          v.                         :
                                     :
UNITED STATES POSTAL SERVICE,        :
                                     :
                    Defendant.       :

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant United States Postal Service (Postal Service) asks the Court to enter summary judgment in its favor and dismiss plaintiff's Second Amended Complaint because the undisputed facts demonstrate defendant did not discriminate against plaintiff David Howard in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* Plaintiff claims in Count I of his Second Amended Complaint that, after he was diagnosed with major depression caused by alcohol and heroin addiction, the Postal Service discriminated against him because it did not accommodate him indefinitely by changing his work hours from the night shift to the day shift but rather it reassigned him to the day shift for only six months.

Defendant seeks summary judgment on Count I because plaintiff's condition for which he sought accommodation did not affect the major life activity of working as required by the Rehabilitation Act and, alternatively, the alleged disability was not permanent or of sufficient duration to constitute a disability. As a further alternative basis, defendant seeks summary judgment because to accommodate plaintiff in the manner he sought defendant would have violated the seniority rights of other union members, which the Rehabilitation Act does not require.

Plaintiff further claims in Count II of the Second Amended Complaint that the Postal Service and plaintiff's labor union breached their duties under the collective bargaining agreement. Defendant seeks summary judgment on Count II because plaintiff will not be able to show that the Postal Service breached the agreement and that the union failed to represent him properly. The undisputed facts demonstrate that plaintiff received appropriate treatment from the Postal Service under the collective bargaining agreement and that he received the union representation to which he was entitled under the agreement.

## I.    STATEMENT OF FACTS

### A.    Plaintiff's Work History at Southeastern

Plaintiff, who is currently 40 years old, was employed by the Postal Service from December 31, 1988 until he was separated from the Postal Service in 1998. April 21, 2005 Deposition of David Howard (Howard Dep.) at 7, attached as Ex. A. Plaintiff worked as a window clerk at post offices in Exton, Coatesville, and Mendenhall until approximately 1994 when he became a mail handler at Southeastern Processing and Distribution Center (Southeastern) in Devon. Howard Dep. at 21-22.

Upon his move to Southeastern, plaintiff became a member of the United States Postal Service National Postal Mail Handlers' Union (Mail Handlers' Union). Id. at 22. Plaintiff bid under the terms of the collective bargaining agreement between the Postal Service and the Mail Handlers' Union for a craft position known as letter tray breakdown and for the night shift.[1] Id.

---

[1]    The Postal Service operates on three shifts or tours. Tour One is from approximately 10 p.m. to 6 a.m. Tour Two is from approximately 6 a.m. until 2 p.m., and Tour Three is from approximately 2 p.m. until 10 p.m. April 20, 2005 Deposition of Frank Ranieri, Manager Distribution Operations, Southeastern (Ranieri Dep.) at 13-14, attached as Ex. B.

at 24-25.  According to plaintiff, letter tray breakdown involved sorting bar-coded mail from regular stamped mail and then moving the mail through the area to prepare for delivery.  Id. at 25.

Letter tray breakdown took place on all shifts.  Id. at 25-26.  The majority of the work, however, took place during the night shift, and during the time that plaintiff claims he was discriminated against, the Postal Service was in the process of moving other mail handlers from the day shift (Tour Two) to the night shift (Tour One) or the swing shift (Tour Three) to meet the operational needs on those shifts.  May 10, 2005 Deposition of Felicia Adamski, Labor Relations Specialist, (Adamski Dep.) at 25, attached as Ex. C.

In the fall of 1996, plaintiff began treatment for alcohol and heroin addiction.  Howard Dep. at 16, 22-23.  After he completed the inpatient portion of the treatment, he returned to work at Southeastern and within a short time requested a change in schedule to the day shift.  Id. at 28. Plaintiff claims that the plant manager told him to complete a revised schedule form every 30 days and to provide medical documentation regarding the need for a day shift assignment.  Id. at 29-30.  Plaintiff provided a letter dated September 27, 1996 from Dr. Michael Marcus of the Keystone Center who stated that plaintiff's "Axis I Diagnosis is Alcohol, Heroin dependency and Major depression.  David (sic) prognosis is fair to good.  David is psyciatrically (sic) stable and poses no danger to himself or others on this medication.  David may resume regular work duties."  Sept. 27, 1996 Letter to C. Thompson from M. Marcus, Ex. R-3 attached to April 20, 2005 Deposition of Frank Ranieri (Ranieri Dep.), attached as Ex. B.  Plaintiff also provided a doctor's note dated October 1, 1996 from David Kalkstein, M.D., Psychiatric Care Associates, who stated "David Howard is under my medical care.  It would be advantageous to his medical

condition for him to be on the day shift." Oct. 1, 1996 Memo from D. Kalkstein, Ex. R-1

attached to Ranieri Dep.

Frank Ranieri, Manager of Distribution Operations, who was responsible for light duty

assignments at Southeastern in 1996 and 1997, testified that revised schedules were intended to

last approximately 90 days. Ranieri Dep. at 43-45. After that time, the employee must return to

his schedule or, if he has a continuing medical condition, the employee can apply for light duty.

Id. Light duty assignments were for employees who suffered non-work related injuries that

prevented them from performing their jobs. Id. at 16.[2]

In response to his request for a revised schedule, plaintiff was assigned to day shift where

he performed letter tray breakdown. Id. at 30. In February 1997, plaintiff applied for a light duty

position on the day shift as opposed to a revised schedule. Id. at 49-51. Plaintiff states that he

---

[2]    The collective bargaining agreement between the Postal Service and the Mail
Handlers provides that light duty assignments are subject to local implementation due to the
varied size of installations and conditions within installations. United States Postal Service
National Postal Mail Handlers' National Agreement, Article 13, Section 13.3, attached as Ex. D.
The agreement specifically provides that each facility is responsible for determining the number
of light duty assignments within a craft: "The number of assignments within the craft that may be
reserved for temporary or permanent light duty assignments, consistent with good business
practices, shall be determined by past experience as to the number of reassignments that can be
expected during each year, and the method used in reserving these assignments to insure that no
full-time regular employee shall be adversely affected, will be defined through local negotiations.
The light duty employee's tour hours, work location and basic work week shall be those of the
light duty assignment and the needs of the service, whether or not the same as for the employee's
previous duty assignment." Id., Section 13.3(C).

In the local agreement, the Postal Service and the union agreed that "The number of and
place of light duty assignments shall be consistent with good business practices," and "No
regularly assigned member of the regular work force shall be adversely affected by the
reservation of light duty assignments." Memorandum of Understanding between U.S. Postal
Service, Southeastern General Mail Facility, and Mail Handlers Local #308, dated Nov. 14,
1996, Items M and N, attached as Ex. E.

was concerned that Mr. Ranieri was going to deny plaintiff's continued revised schedule request,
and plaintiff believed the Postal Service would have to accommodate him if he was on light duty.
Id. at 41-42; Ranieri Dep. at 15.  By letter dated January 14, 1997, plaintiff's doctor, Joseph K.
Stanilla, Psychiatric Care Associates, advised the Postal Service that plaintiff "has shown
excellent improvement and is doing well.  A part of his improvement is due to his being able to
work on day shift.  It is imperative for his continued treatment that he continue to work only on
day shift.  This is for medical necessity.  Switching to another shift would seriously jeopardize
his treatment."  Jan. 14, 1997 Letter of J. Stanilla to F. Ranieri, Ex. R-4 attached to Ranieri Dep.
On a Postal Service form dated Feb. 4, 1997, Dr. Stanilla stated that plaintiff's diagnosis was
major depression; his prognosis was good; and the work restrictions of day shift only were
described as "indefinitely for at least six months."  Feb. 4, 1997 Return to Work Certification,
Ex. R-5 attached to Ranieri Dep.

     Plaintiff held a light duty assignment performing letter tray breakdown until May 1997
when he was told to return to the night shift by Mr. Ranieri.  Howard Dep. at 51, 56.  On May 9,
1997, Mr. Ranieri provided plaintiff with a letter stating that his continuing request for a light
duty assignment on the day shift was denied.  Mr. Ranieri stated "Your seven previous requests
for a revised schedule were approved as a temporary measure so that you could resolve your
personal problems.  The approval was also contingent upon you exercising your bidding rights to
find a schedule that accommodated your personal needs."  May 9, 1997 Letter to D. Howard
from F. Ranieri, attached as Ex. F.  Shortly thereafter, on May 16, 1997, the Acting Plant
Manager, Tung Min Kwan, advised plaintiff that "due to the needs of the operation [his] request
to continue on a revised schedule cannot be granted."  May 16, 1997 Letter from T. Kwan to D.

Howard, attached as Ex. G.  Mr. Kwan told plaintiff he was expected to return to his regular assignment.  Id.

Ms. Adamski, the Southeastern labor relations specialist at the time, testified that, while plaintiff was assigned to the day shift, Southeastern was in the process of moving mail handlers from Tour Two (the day shift) and putting them on Tours One and Three because of operational needs.  Adamski Dep. at 25, 37, 55.  Plaintiff was a less senior mail handler than union members who were being moved off of the day shift or Tour Two, and the Postal Service concluded that it could no longer accommodate plaintiff's need to work on day shift at Southeastern in his particular craft of mail handler.  Id. at 25.  Plaintiff was told that he could return to the night shift or bid for a day shift position, or bid for a position at another facility, or for a different job in the same craft, or enter another craft.  Id. at 33-34, 37, 90-92.  Because plaintiff held a bid position on the night shift, the Postal Service was not able to fill that position on the night shift while plaintiff was working on the day shift.  Howard Dep. at 55.

As Ms. Adamski testified in her deposition:

> [M]anagement did not dispute Dave's need for day shift work.  I don't believe that was ever an issue.  The problem is that you have to have available work for that individual.  And that's where this situation met a crossroad.  There was no assignment on the day shift for David, a regular full-time employee who had a restriction of day shift only.  We were in the middle of excessing employees off that tour in his craft to other shifts, which would make it impossible for us to be reassigning employees with medical accommodations to assignments that did not exist.  We didn't have work on that shift to give to him.  We were telling him he could find work on day shift in other places, other facilities, other crafts.  He chose not to do that.

Id. at 37.

Rather than follow the Postal Service's recommendation, plaintiff persisted in his efforts to force the Postal Service to allow him to work indefinitely on the day shift at Southeastern as a mail handler. Howard Dep. at 98-99, 103-105; Adamski Dep. at 33-34, 37, 90-92. When the Postal Service did not comply, plaintiff did not come to work after May 1997. Howard Dep. at 63. He filed an EEO action claiming disability discrimination. Id. at 62. He filed a grievance with the Mail Handlers' Union for failure to keep him on light duty. Id. at 72.

On January 26, 1998, plaintiff requested a permanent light duty assignment and provided medical documentation that he was partially incapacitated from the fall of 1996 until "indefinitely." Id. at 84, 87, 90. In response to his request, Mr. Ranieri sent plaintiff a letter dated February 5, 1998, advised plaintiff that since he could not fulfill the duties of his assignment, i.e., work on Tour One, he should choose among the following options: (1) he could consider a voluntary change to another craft or to a position in the same craft which he would be physically able to perform the essential functions of the position; (2) he could apply for disability retirement; or (3) he could resign. Feb. 5, 1998 Letter of F. Ranieri to D. Howard, attached as Ex. H. During his deposition, plaintiff contended that he chose none of the options presented because he believed that he was entitled to accommodation on the day shift without having to take any action to re-bid his position. Howard Dep. at 103, see also Feb. 13, 1998 Memo from D. Howard to F. Ranieri, attached as Ex. I.

After plaintiff failed to take any action to return to work under the terms the Postal Service had set out for him, the Postal Service initiated the process to separate plaintiff from employment at the Postal Service. Adamski Dep. at 90-92. Plaintiff was provided a Notice of

Separation for Disability date July 1, 1998.[3]  Id. at 72-75, 79.  He filed an additional grievance alleging harassment by the notice of separation.  Howard Dep. at 73.

###    B.    Plaintiff's Alleged Disability

In the fall of 1996, plaintiff was diagnosed with major depression caused by alcohol and heroin addiction.  Howard Dep. at 31.  Plaintiff admits that before he worked for the Postal Service he used alcohol and drugs, and that while employed at the Postal Service, he began to use alcohol and heroin more and more.  Id. at 15-17.  He also said he had been arrested "a few times" in connection with alcohol and drug use and, on one occasion, while employed at the Postal Service, he spent 90 days in jail.  Id. at 17-20.

Plaintiff testified at his deposition that in the fall of 1996, after his inpatient treatment for addiction, his doctor said it would be advantageous to his health to work day shift.  Id. at 45.  Plaintiff explained that he needed to maintain the schedule he had while in rehabilitation and that he was required to attend Narcotics Anonymous meetings, which he states were held hourly between 8 p.m. and midnight.  Id. at 31-33.  Plaintiff admits that Narcotics Anonymous meetings were held at other day time hours, such as noon, but said there were fewer of those meetings and he was trying to attend 90 meetings in 90 days in accordance with the Narcotics Anonymous principles.  Id. at 34.  Plaintiff said he attended Narcotics Anonymous meetings for about one and one-half years and now only attends occasionally.  Id. at 12-13, 68.  Plaintiff cannot remember

_____

[3]     Plaintiff was treated as on leave without pay until resolution of actions he had brought under the union grievance process and the Equal Employment Opportunity (EEO) process.  Adamski Dep. at 72-75, 79.  Plaintiff was officially separated from the rolls in May 2002 because that is when the EEO process was complete.  Id. at 127-129.

-8-

when he stopped taking medication for his condition or when he last saw a medical practitioner regarding his condition. <u>Id</u>. at 11.

In addition, plaintiff states that when he completed his inpatient treatment and briefly returned to the night shift, he was uncomfortable working with those employees who he said used alcohol and drugs. <u>Id</u>. at 35. Working next to those employees caused plaintiff to feel anxiety. <u>Id</u>. at 37.

Plaintiff also states that when he completed inpatient treatment for alcohol and heroin dependency, he could not sleep and his memory and ability to perform his job were affected. <u>Id</u>. at 36. Plaintiff was on medication to treat his depression and addiction and he saw a medical practitioner about once a month. <u>Id</u>. at 38-39. Plaintiff said after several months he was able to sleep at night. <u>Id</u>. at 40-41.

Plaintiff stated that he and his doctors had discussed a convalescence period for his condition but said it was slow and gradual. <u>Id</u>. at 96. Plaintiff claims he was not ready to return to the night shift in May 1997 when the Postal Service terminated his light duty assignment to day shift. <u>Id</u>.

Plaintiff testified that he did not apply to change his bid assignment as requested by the Postal Service because it was never his intention to work on the day shift on a permanent basis. <u>Id</u>. at 103. He said he "only wanted the accommodations to accommodate my work restrictions for a period of time until I was recovered, I didn't want to stay on -- it wasn't that I wanted to work on day shift, I didn't want to work on day shift permanently, I just wanted it for as long as I needed it for my convalescence period and once that convalescence period was over, I would go back to the night shift." <u>Id</u>. at 103-4.

-9-

Long after plaintiff was noticed for separation in July 1998, plaintiff submitted to defendant a doctor's note dated August 30, 1999 that permitted him to return to work without any restrictions.  Id. at 63-65.  Plaintiff said he did not seek to work without restrictions prior to that time because he was pursuing his EEO case and grievances.  Id. at 65.

### C.    Violation of Collective Bargaining Agreement

Plaintiff filed two grievances with the union.  On May 22, 1997, he filed a grievance regarding his removal from a light duty assignment.  Standard Grievance Form dated May 22, 1997, attached as Ex. 3 to Howard Dep.  On July 15, 1998, he filed a grievance alleging harassment in that the Postal Service sought to remove him from employment.  Standard Grievance Form dated July 15, 1998, attached as Ex. 7 to Howard Dep.

Ms. Adamski met with Frank Phillips, local president of the Mail Handlers' Union, and Rick Vennera, local administrative vice president, with respect to plaintiff's grievances. Adamski Dep. at 17.  According to Ms. Adamski, the employee initiates Step One of the grievance process by filing the grievance with a supervisor, who has 14 days to resolve it.  Id. at 17-18.  If denied, the grievance is appealed to Step Two at which time the union "owns" the grievance and a meeting is scheduled with a management representative, which in this instance was Ms. Adamski.  Id. at 18.  If the grievance is not resolved, the union may appeal it to Step Three, a meeting with management's area labor relations specialist.  Id.  If still unresolved, the matter would proceed to arbitration on first come, first served basis.  Id. at 18-19.[4]

_____

[4]    Ms. Adamski's recitation of the grievance process is supported by the November 21, 2002 Declaration of Frank Jacquette, Labor Relations Specialist, United States Postal Service Headquarters Labor Relations Office ("Jacquette Decl."), filed contemporaneously with defendant's Renewed Motion for Summary Judgment.  Under Article 15.2 of the Mail Handlers' agreement, either an employee or a union steward may initiate a grievance at step one of the

Plaintiff's grievances regarding the May 1997 termination of light duty assignment and the July 1998 notice of separation were settled by the union prior to arbitration.  The Postal Service and the union decided that plaintiff had been provided sufficient accommodation with respect to the May 1997 grievance, and they agreed that the outcome of plaintiff's EEO action would govern the outcome of the July 1998 grievance.  Adamski Dep. at 87, 90-91; see also October 1999 Pre-Arb Settlement, attached as Ex. 14 to Adamski Dep.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  "One of the principle purposes of summary judgment is to isolate and dispose of factually unsupported claims and defenses . . . ."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The substantive law determines which facts are material.  Only disputes as to facts which might affect the outcome of the litigation under the governing law preclude summary judgment.  A dispute is "genuine" if the evidence is such that, under the standard of proof which would apply at a trial on the merits, as determined by the substantive law, a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 254 (1986).

---

grievance procedure.  Id. ¶ 5.  Once step one of the grievance is complete, the union, not the employee, may unilaterally decide whether to pursue a grievance to steps two, three or four.  Id. ¶ 6.  Under Article 15.2 , the union has the right and authority at any time to settle a grievance, in whole or in part, with or without the employee's consent.  Id.  ¶ 7.  Article 15 of the relevant Mail Handlers' collective bargaining agreement is attached hereto as Ex. J.

-11-

The court must view the facts in the light most favorable to the non-moving party, and all justified inferences are to be drawn in favor of the non-moving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970); <u>Nathanson v. Medical College of Pennsylvania</u>, 926 F.2d 1368 (3d Cir. 1991). At the same time, the Supreme Court has made plain that the party moving for summary judgment can demonstrate the absence of evidence to support the non-moving party's case. <u>Celotex Corp.</u>, 477 U.S. at 325. The non-moving party must then come forward with evidence that establishes each element for which that party bears the burden of proof at trial. <u>Id.</u> at 324. The non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings, but by its own affidavits, depositions, answers to interrogatories, or admissions, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. <u>Coolspring Stone Supply, Inc. v. American States Life Ins. Co.</u>, 10 F.3d 144, 147 (3d Cir. 1993) (non-moving party "must offer specific facts contradicting the movant's assertion that no genuine issue is in dispute.") If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

## III.    <u>ARGUMENT</u>

### A.    <u>Summary Judgment Should be Entered on Count I Because The Undisputed Facts Show That Plaintiff Is Not a Qualified Individual With a Disability</u>

Defendant seeks summary judgment on Count I -- alleging discrimination in violation of the Rehabilitation Act -- because plaintiff will not be able to demonstrate that he suffers from a disability within the meaning of the Act. As set forth in greater detail below, plaintiff was not substantially limited in a major life activity of working because inability to work on the night

shift did not preclude him from working in a class of jobs or a broad range of jobs in a variety of classes.  Furthermore, plaintiff's condition of depression was temporary, according to plaintiff and his physician, and therefore his condition did not satisfy the permanency or duration requirements of the Rehabilitation Act.  Lastly, the Postal Service was not required to find plaintiff a craft position on day shift if it would be violating the seniority rights of other employees under the terms of the collective bargaining agreement.

### 1.    Plaintiff Was Not Substantially Limited in the "Major Life Activity" of Working

In 2002, the Supreme Court defined disability as used in the Americans With Disabilities Act (ADA) in Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002). Since Toyota, the United States Court of Appeals for the Third Circuit laid out the standard for an ADA discrimination action in Williams v. Philadelphia Housing Authority Police Department, 380 F.3d 751 (3d Cir. 2004).  The Third Circuit stated that to bring an action under the ADA (which also applies to the Rehabilitation Act of 1973),[5] a plaintiff must first establish a *prima facie* case of discrimination.  380 F.3d at 761.

Citing Taylor v. Phoenixville School District, 184 F.3d 296, 306 (3d Cir. 1999), and Shiring v. Runyon, 90 F. 3d 827, 831 (3d Cir. 1996), the court held that to establish a *prima facie* case of discrimination based on a disability, a plaintiff must show:

---

[5]    Plaintiff has not specifically alleged the provision of the Rehabilitation Act of 1973 that he claims the defendant has violated.  Actions for employment discrimination have been brought under both section 501, 29 U.S.C. § 791(b), and section 504, 29 U.S.C. § 794(a), of the Act.  Under both provisions, the Rehabilitation Act provides that the standards applied to determine whether the Act has been violated shall be the same standards as under the Americans With Disabilities Act.  29 U.S.C. §§ 791(g), 794(d); see also McPherson v. Michigan High School Athletics Ass'n, 119 F.3d 453, 459-60 (6th Cir. 1997).

1.  that he is a disabled person within the meaning of the ADA;

2.  that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and

3.  that he nonetheless suffered an adverse employment action as a result of the discrimination.

Williams, 380 F.3d at 761.

To meet the first prong of this test, the Rehabilitation Act requires the plaintiff to meet the definition of an "individual with a disability."  That definition applies to any person who:

i.  has a physical or mental impairment which substantially limits one or more of such person's major life activities;

ii.  has a record of such an impairment; or

iii.  is regarded as having such an impairment.

Williams, 380 F.3d at 762; 29 U.S.C. §705(20)(B).

A substantial limit on a major life activity requires the individual be (i) unable to perform a major life activity that a person in the general population can perform; or (ii) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.  Williams, 380 F.3d at 762, citing 29 C.F.R. § 1630.2(j)(1).  In addition, several factors must be considered, including (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact, of or resulting from the impairment.  Id.; 29 C.F.R. § 1630.2(j)(2).

-14-

Further, when an individual such as the plaintiff here claims that the disability is "working," "[t]he term 'substantially limits' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major activity of working." Williams, 380 F.3d at 763; 29 C.F.R. § 1630.2(j)(3)(i).

Plaintiff here cannot show that he is significantly restricted in the ability to perform *either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities*.  The undisputed facts are that plaintiff was capable of working in his craft of letter tray breakdown, and he does not claim that he was incapable of performing either a class of jobs or a broad range of jobs in various classes.  See generally Second Amended Complaint; Howard Dep.

The undisputed facts establish that plaintiff was precluded from *performing a single, particular job* -- the night shift assignment -- and that restriction does not qualify as a substantial limitation of the major life activity of working.  By insisting on an indefinite day shift assignment until he and his doctor felt he could return to the night shift, plaintiff was seeking to establish the conditions of his employment, namely that he could work whatever shift he wanted, when he wanted, and as long as he wanted.  The Postal Service, in plaintiff's view, was required to indefinitely hold open two positions for plaintiff, his regular bid assignment on the night shift and the indefinite light duty assignment on the day shift.

Courts have uniformly held that an employee's claim of discrimination based on not being able to work a night shift fails to establish that the employee is substantially limited in

-15-

working.  See Cartwright v. Lockheed Martin Utility Services, Inc., No. 00-6671, 2002 WL

1461753 *4-6 (6th Cir. July 3, 2002) (plaintiff's claimed impairments of sleep apnea,

hypertension, depression and pain found not to substantially limit the major life activity of

working because plaintiff showed depression caused by relationship with other employees and

not that he was unable to perform a class of jobs or a broad range of jobs in various classes);

Colwell v. Suffolk County Police Dept., 158 F.3d 635, 644-45 (2d Cir. 1998) (inability to work

late hours or night shifts due, in part, to difficulties sleeping and stress did not demonstrate

substantial limitation in major life activity of working because plaintiffs not unable to perform a

class or broad range of jobs); McMullin v. Ashcroft, 337 F. Supp. 2d 1281 (D. Wyo. 2004)

(summary judgment granted for defendant because plaintiff's claim that he could not work

graveyard shift due to his depression did not preclude him from performing a class of jobs or

broad range of jobs in various classes); Mont-Ros v. City of Miami, 111 F. Supp. 2d 1338, 1353-

54 (S.D. Fla. 2000) (plaintiff's claim that he could not work at night was not sufficient to

establish that he was significantly restricted in the ability to perform either a class of jobs or

broad range of jobs in various classes).

     In light of the well-established precedent on this issue and the undisputed facts, defendant

asks the Court to enter summary judgment in its favor because plaintiff was unable to work a

single particular job and he cannot show that he could not perform a class of jobs or a broad

range of jobs in a variety of classes.

### 2.    Plaintiff's Depression Was Not Permanent

     In the alternative, defendant argues that plaintiff's discrimination claim must fail because

plaintiff's medical need to work day shift to stabilize his condition of major depression and drug

-16-

dependency was not of a permanent duration and it was not indefinite.  See 29 C.F.R.

§ 1630.2(j)(2).  Another judge of this court, in a similar case, found that a plaintiff who claimed

to suffer from depression did not have an impairment that was permanent or of sufficiently

indefinite duration to constitute a disability within the meaning of the ADA.  Dubose v. District

1199C, National Union of Hospital and Health Care Employees, et al., 105 F. Supp. 2d 403 (E.D.

Pa. 2000) (J. Reed).  Citing the testimony of plaintiff's doctor that his condition was non-chronic

and evidence reflecting plaintiff's recovery, the court stated that "[a]ny mental impairment is

therefore non-chronic and of a temporary nature which does not qualify as a disability."  Id. at

415.  The court specifically referenced the EEO regulations at 29 C.F.R. § 1630.2(j): "temporary,

non-chronic impairments of short duration, with little or no long term or permanent impact, are

usually not disabilities."  Id.  See also Johnson v. Foulds, Inc., 1996 WL 41482 (N.D. Ill. Jan. 31,

1996) (where plaintiff sought medical leave for depression, the implication was that once she

recovered she would be able to return to work and, therefore, her impairment was temporary and

did not meet disability requirements under ADA).

     In this case, plaintiff's doctor stated in February 1997 that plaintiff's need to work the day

shift was temporary, although he described it as "indefinite – at least six months."  Feb. 4, 1997

Return to Work Certification, Ex. R-5 attached to Ranieri Dep.  In all other respects, plaintiff's

prognosis was good and he was expected to recover.  Id.; Jan. 14, 1997 Letter of J. Stanilla to F.

Ranieri, Ex. R-4 attached to Ranieri Dep.  The Postal Service accommodated plaintiff on the day

shift for in excess of six months, October 1996 until May 1997.  Howard Dep. at 51, 56.

     Plaintiff also viewed his condition to be temporary.  Plaintiff discussed his convalescence

period with his doctor and, although, he was told it would be slow and gradual, he was expected

to recover and he did, in fact, recover. Id. at 96, 103-4. Plaintiff states that he refused to seek another bid assignment that was on the day shift or at another location because he intended to return to the night shift. Id. at 103-4. Lastly, while plaintiff raised no medical restrictions after his notice of separation in July 1998, plaintiff, in connection with a possible resolution of his EEO case, obtained a medical certification in August 1999 stating that he could return to work without restrictions. Id. at 63, 65-67.

Because plaintiff has recovered from major depression and did so sometime between July 1998 and August 1999, plaintiff's claimed basis for disability was not sufficiently permanent or indefinite to meet the requirements of the Rehabilitation Act and defendant seeks summary judgment on that basis.

### 3. Defendant Offered Plaintiff a Reasonable Accommodation Consistent With the Collective Bargaining Agreement

As a third alternative basis for dismissing Count I, defendant contends that it offered plaintiff a reasonable accommodation that was consistent with its collective bargaining agreement with the union and to do otherwise would have improperly harmed the seniority rights of other employees who were Mail Handlers. Defendant gave plaintiff six months on the day shift in a revised schedule/light duty capacity and then an opportunity to re-bid his position with the Mail Handlers' Union or to change craft or facility. Howard Dep. at 30, 63. The day shift (Tour Two) had excessed six to eight employees in plaintiff's craft, all of whom were senior to plaintiff, and there was no possibility of a position in his craft for plaintiff on the day shift. Adamski Dep. at 25, 75, 99-100. Ms. Adamski testified that there would have been an adverse effect on the seniority rights of other employees because there "were 30-year, 25-year employees

-18-

that were excessed off the tour to other shifts that had priority to go back to that shift over Mr. Howard." Id. at 100.  The union president Frank Phillips and Ms. Adamski on behalf of the Postal Service agreed that plaintiff had been sufficiently accommodated and that the contract requirements had been met in that plaintiff had been provided other options.  Id. at 75.

In Kralik v. Durbin, 130 F.3d 76, 83 (3d Cir. 1997), the Third Circuit held that an accommodation is not reasonable if it has an adverse impact on union members with seniority rights.  The court followed well-established precedent in stating "an accommodation to one employee which violates the seniority rights of other employees in a collective bargaining agreement simply is not reasonable."  130 F.3d at 82-83.  In refusing to find for the plaintiff, the court explained that unless the union waived the other employees' seniority rights, the employer was at risk for violating the collective bargaining agreement to accommodate a single employee. Id. at 83.  Further, even if the accommodation had only a trivial impact on other employees' seniority rights, the employer would be opening itself up to grievances and potentially costly remedies that the court found constituted an unreasonable burden on the employer.  Id.  See also US Airways, Inc. v. Barnett, 535 U.S. 391, 404-405 (2002) (Supreme Court found an employer's showing of the rules of a seniority system by itself to be "ordinarily sufficient" to govern management's accommodation decisions); Smith v. Burlington County of New Jersey, 2004 WL 1932850 *4 (D.N.J. Jul. 27, 2004), quoting Kralik ("It is well-established that ordinarily 'a measure that violates a seniority system established in a collective bargaining agreement is not a "reasonable accommodation" and thus is not required by the ADA'").

In this case, the undisputed evidence based on Ms. Adamski's testimony is that to assign plaintiff to the day shift in his craft would have violated the collective bargaining agreement

because six to eight employees with seniority rights for day shift assignments preceded him. Adamski Dep. at 25, 75, 99-100. There is no evidence that the union waived the seniority rights of these other employees for plaintiff's accommodation and, to the contrary, the union resolved plaintiff's grievances by expressly stating that plaintiff had been sufficiently accommodated. Id. at 87, 90-91; see also October 1999 Pre-Arb Settlement, attached as Ex. 14 to Adamski Dep.

For this reason, defendant requests the Court to enter summary judgment in its favor under Count I.[6]

**B.**	**Summary Judgment Should Be Entered on Count II Because the Undisputed Facts Show That Neither the Postal Service Nor the Union Violated the Collective Bargaining Agreement**

As the Postal Service previously argued in its Motion to Dismiss and Renewed Motion to Dismiss, the Supreme Court in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983), held that to sue either the employer or the union or both under the collective bargaining agreement, the plaintiff-employee must prove the same case, i.e., that the union breached its duty of fair representation **and** that the employer breached the collective bargaining

---

[6]	Similarly, plaintiff's claim that he could not work the night shift with employees who he perceived to be addicts does not satisfy the requirement that the employer offer a reasonable accommodation. The Third Circuit addressed this specific claim in Gaul v. Lucent Technologies, Inc., 134 F.3d 576 (3d Cir. 1998). In that case, the plaintiff claimed that because he suffered from depression and anxiety-related orders, he needed to be transferred away from certain employees. 134 F.3d at 577, 579. The court rejected his claim on three grounds: (1) an accommodation would impose an impractical obligation on the employer who would have to continuously move plaintiff away from employees who stressed him out; (2) the administrative burdens on the employer would be extraordinary; and (3) by asking to be transferred away from employees who caused him stress, plaintiff was asking the court to establish the terms of his employment. Id. at 581. Plaintiff's claim here must be rejected for the same reasons: to require the Postal Service to change his shift each time he believes the employees on his shift engaged in alcohol and drug abuse would be too great a burden on the employer and result in the Court setting the terms of plaintiff's employment.

agreement.[7]  462 U.S. at 163-65; see also Albright v. Virtue, 273 F.3d 564, 576 (3d Cir. 2001);

Vavro v. Gemini Food Markets, Inc., 39 F. Supp. 2d 553, 559 (E.D.Pa. 1999).  The Supreme

Court's rationale was as follows:

> It has long been established that an individual employee may bring
> suit against his employer for breach of a collective bargaining
> agreement.  Ordinarily, however, an employee is required to
> exhaust any grievance or arbitration remedies provided in the
> collective bargaining agreement.  Subject to very limited judicial
> review, he will be bound by the result according to the finality
> provisions of the agreement. [We have] recognized that this rule
> works an unacceptable injustice when the union representing the
> employee in the grievance/arbitration procedure acts in such a
> discriminatory, dishonest, arbitrary, or perfunctory fashion as to
> breach its duty of fair representation.  In such an instance, an
> employee may bring suit against both the employer and the union,
> notwithstanding the outcome or finality of the grievance or
> arbitration proceeding.  Such a suit, as a formal matter, comprises

---

[7]     The United States is immune from suit except to the extent that Congress has, by
statute, expressly consented to waive sovereign immunity.  United States v. Mitchell, 455 U.S.
535, 538 (1980).  The Supreme Court has emphasized that any waiver of sovereign immunity
"must be strictly construed in favor of the United States."  Ardestani v. I.N.S, 502 U.S. 129, 130
(1976).  In this instance, the only federal statute that provides for jurisdiction over the Postal
Service for employment-related contract claims is 39 U.S.C. § 1208(b).  That statute permits
suits against the Postal Service based on contracts with labor unions to be brought in federal
district court.  See 39 U.S.C. § 1208(b) ("Suits for violation of contracts between the Postal
Service and the labor organizations representing Postal Service employees, or between any such
labor organizations, may be brought in any district court of the United States having jurisdiction
over the parties without respect to the amount in controversy").

    While on its face, 39 U.S.C. § 1208(b) provides district court jurisdiction for suits only
between the Postal Service and labor organizations or between labor organizations, the Supreme
Court has held with respect to a similar federal statute, § 301(a) of the Labor Management
Relations Act, codified at 29 U.S.C. § 185, that individual employees have standing to sue under
such statutes.  Sims v. Local 308 Mailhandling, 1994 WL 268252 *2 (E.D. Pa.  June 15, 1994).
Because § 1208(b) is analogous to § 301(a), case law developed under § 301(a) for private sector
employees is equally applicable to actions brought by employees of the Postal Service under
§ 1208(b).  See, e.g., Bacashihua v. United States Postal Service, 859 F.2d 402, 405 (6th Cir.
1988); Trent v. Bolger, 837 F.2d 657, 659 (4th Cir. 1988).

two causes of action. . . . "Yet the two claims are inextricably interdependent.  *'To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" (Citations omitted).  The employee may if he chooses sue one defendant and not the other, but the case he must prove is the same whether he sues one, the other, or both.*

DelCostello, 462 U.S. at 164-65 (internal citations omitted) (emphasis added).  These claims are generally referred to as "hybrid" claims:  if the employee's claim fails against either the union or the employer, the claim fails against both.  Id. at 165.  In this case, plaintiff sued only the Postal Service in Count II, but plaintiff must nevertheless show that both the Postal Service and the Mail Handlers' Union breached their duties under the collective bargaining agreement.

With respect to the Postal Service, the undisputed facts demonstrate that the Postal Service did not breach its collective bargaining agreement with the Mail Handlers' Union in its handling of plaintiff's request for a revised schedule and light duty assignment.  As set forth extensively in the Statement of Facts and the Argument in Section III, A, above, the Postal Service provided plaintiff with a revised schedule and light duty assignment for as long a time as the Postal Service determined it could do so.  Plaintiff was told in May 1997, after six to eight employees in his craft with 25 to 30 years of seniority were excessed, that there was no longer any work for him within his craft on the day shift.  Adamski Dep. at 25, 75, 99-100.  The Postal Service was not required by the collective bargaining agreement to make work for the plaintiff, but rather the Postal Service retained the discretion to identify the number and type of light duty assignments at each location.  See Memorandum of Understanding between U.S. Postal Service, Southeastern General Mail Facility, and Mail Handlers Local #308, dated Nov. 14, 1996, Item M, attached as Ex. E ("The number of and place of light duty assignments shall be consistent with

good business practices"). The Postal Service was contractually precluded from affecting the
seniority rights of other union employees in identifying light duty assignments. Id., Item N ( "No
regularly assigned member of the regular work force shall be adversely affected by the
reservation of light duty assignments"). Similarly, while plaintiff may contend that casual
employees[8] on the day shift could have been released so plaintiff could perform their jobs,
Ms. Adamski testified that under the collective bargaining agreement if any permanent positions
were created on the day shift due to reduction of casuals, the vacancies created would have been
filled by the six to eight employees in plaintiff's craft with seniority who had been excessed.
Adamski Dep. at 38-39.

    To prove that the union breached its duty of fair representation, plaintiff must
demonstrate that the union's actions were either arbitrary, discriminatory or in bad faith. Vavro,
39 F. Supp. 2d at 559, citing Air Line Pilots Association International v. O'Neill, 499 U.S. 65, 67
(1991), and Vaca v. Sipes, 386 U.S. 171, 190 (1967). A union's conduct is arbitrary if it is so far
outside a wide range of reasonableness as to be irrational. Vavro, 39 F. Supp. 2d at 559, citing
Air Line Pilots, 499 U.S. at 67. Furthermore, a union official's conduct is not arbitrary "when it
is merely inept or negligent nor does mere disagreement about strategy form a foundation of a
[lawsuit against the union and/or employer]." Vavro, 39 F. Supp. 2d at 559.

    Plaintiff brought two grievances that overlapped with his EEO action, of which this is the
appeal. Howard Dep. at 62, 72, 73; Standard Grievance Form dated May 22, 1997 (alleging
discrimination in termination of light duty), attached as Ex. 3 to Howard Dep.; Standard

---

    [8]    Casual employees are also called the supplemental work force. They are limited
to working in increments of 90 days and their hours can vary from one hour to 40 hours per
week. Adamski Dep. at 37-38.

Grievance Form dated July 15, 1998 (alleging harassment for notice of separation), attached as Ex. 7 to Howard Dep.  The union entered into a pre-arbitration settlement of both grievances. Adamski Dep. at 87, 90-91; see also October 1999 Pre-Arb Settlement, attached as Ex. 14 to Adamski Dep.

To the extent plaintiff disagrees with the union's decision to settle both grievances, the undisputed facts fail to demonstrate that the union's actions were arbitrary, discriminatory or in bad faith.  First, plaintiff's grievances were taken to Step Two because the union representatives met with management's representative, Ms. Adamski, to reach a resolution of plaintiff's grievances.  Adamski Dep. at 87, 90-91.  Second, meetings were scheduled between plaintiff and union and management representatives and plaintiff failed to show up for the meetings.  April 21, 2005 Deposition of Marc F. Novia, Absence Control Supervisor, Southeastern, at 23-25, attached as Exhibit K; Adamski Dep. at 51-52.  Third, the EEOC considered plaintiff's termination of light duty and notice of separation claims and, in 2002, found that plaintiff failed to make a prima facie showing that he was a qualified individual with a disability and, alternatively, that he failed to show defendant's legitimate business reason for noticing plaintiff's separation was pretextual.  See March 1, 2002 Order of Judgment, EEOC Hearing No. 170-A1-8053X, Agency No. 1C-195-0023-98, attached as Ex. L.

It is axiomatic that the union's representation of plaintiff was not arbitrary, discriminatory or in bad faith if the union in 1999 settled plaintiff's grievance on the basis that he had been sufficiently accommodated because that is the same conclusion that the EEOC reached in 2002. See March 1, 2002 Order of Judgment at 5, Ex. L (while finding Postal Service had no duty to reasonably accommodate plaintiff, EEOC also found that if Postal Service had such a duty,

-24-

Postal Service fulfilled duty by offering plaintiff options, such as changing positions or crafts).

Further, the union's effort to pursue plaintiff's grievances to Step Two and include the plaintiff,

who failed to show up at scheduled meetings, in the process demonstrates it reasonably

represented plaintiff.

Because the undisputed facts show that plaintiff cannot show that either the Postal

Service or the Mail Handlers' Union breached their duties under the collective bargaining

agreement, much that they both breached the agreement, defendant seeks summary judgment to

be entered in its favor on Count II.

## IV.    <u>CONCLUSION</u>

For the reasons set forth in defendant's motion for summary judgment and this

memorandum of law, the Postal Service respectfully requests the Court to enter summary

judgment in its favor.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


_____

VIRGINIA A. GIBSON
Assistant United States Attorney
Chief, Civil Division


_____

BARBARA ROWLAND
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8311 Telephone
(215) 861-8349 Facsimile

Of Counsel:

Jennifer S. Breslin
Attorney, Law Department
Philadelphia Field Office
United States Postal Service
P.O. Box 40595
Philadelphia, PA  19197-0595
(215) 931-5091

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the <u>24th</u> day of June 2005, I caused a true and correct copy of the foregoing Defendant's Motion for Summary Judgment and Memorandum of Law to be served by first-class United States mail, postage prepaid, upon the following:

James J. Munnis, Esq.
882 S. Matlack Street
Suite 101
West Chester, PA 19382

_____
Barbara Rowland