IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID HOWARD** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-CV-3797 |
| | : | |
| **JOHN E. POTTER, Postmaster General** | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                                       May   15, 2006

  Plaintiff David Howard ("Howard") brings this action against Defendant John E. Potter, Postmaster General, United States Postal Service ("the Postal Service") for wrongful discharge (Count One) and breach of contract (Count Two).  Now before the Court is the Postal Service's Motion for Summary Judgment on all counts.  For the reasons that follow, the Court will grant the Motion.

**I.      Background**

  Howard began working for the Postal Service on December 31, 1988.  Second Amended Complaint ¶ 14.  In 1994, he worked as a mail handler on the night shift at the Southeastern Processing and Distribution Center in Devon, Pennsylvania.  Id.; Deposition of David Howard ("Howard Dep.") at 24-25.  His specific position was in letter tray breakdown where he was responsible for separating the bar-coded mail from regular-stamped mail and then moving the mail through the area for delivery.  Howard Dep. at 25.

  In 1996, Howard started inpatient treatment for alcohol and heroin abuse.  Id. at 16, 22-23.  He was diagnosed with major depression caused by alcohol and heroin addiction.  Second Amended Complaint ¶ 7.  After his treatment, Howard returned to work on September 14, 1996


on his normal night shift. Id. at ¶ 16. In October 1996, Howard requested to switch to the day shift because (1) he wanted to maintain the daily routine he had while he was in rehabilitation; (2) he was required to attend Narcotics Anonymous meetings, which were held more frequently during evening hours; and (3) he was uncomfortable working with the night-shift employees who allegedly used alcohol and drugs. Howard Dep. at 28, 31-35, 37. Following the Postal Service's instructions, Howard filled out a revised schedule form and provided medical documentation as to why he should be transferred to the day shift. Id. at 29-30. The Postal Service granted his request and placed him on a revised schedule on the day shift for four months, from October 1996 to February 1997.[1]

In February 1997, he applied for a light duty assignment on the day shift as opposed to a revised schedule. Id. at 49-50. That same month, Howard presented a doctor's note recommending that he work only the day shift during his recovery period "indefinitely for at least six (6) months." Second Amended Complaint at ¶ 19. Howard was granted a light duty day shift from February 1997 to May 1997. Howard Dep. at 56. In May 1997, he was advised by the Postal Service that he could (1) go back to the night shift performing the same position, letter tray breakdown; (2) bid for the day shift for the same position; (3) bid for the same position at another facility; (4) bid for a different position in the same mail handler craft; or (5) enter another craft. Deposition of Felicia Adamski ("Adamski Dep.") at 33-34, 37, 90-92. He did not choose any of these options and instead insisted on staying in the same position on the day shift for the

---

[1] Revised schedules last approximately ninety days. If the medical condition persists after the ninety-day period, the employee can apply for light duty. Light duty assignments are for employees with non-work related injuries that prevent them from performing their jobs.

same craft without bidding for the day shift.  Howard Dep. at 98-99, 103-105; Adamski Dep. at 33-34, 37, 90-92.

In May 1997, Howard stopped coming to work and filed a United States Equal Employment Opportunity Commission ("EEOC") action claiming disability discrimination.  Howard Dep. at 62-63.  He also filed a grievance with the Mail Handlers' Union (the "Union") for the Postal Service's failure to keep him on light duty.  Id. at 72.

On January 26, 1998, Howard requested a permanent light duty assignment and provided medical documentation recommending that he work day shift hours only.  Second Amended Complaint ¶ 23.  On February 5, 1998, the Postal Service informed him that since he could not fulfill the duties of his assignment on the night shift he could: (1) consider a voluntary change to another craft or to a position in same craft in which he would be able to physically perform the essential functions of the position, (2) apply for disability retirement, or (3) resign.  Id. ¶ 26, Ex. E.  Howard was told to respond by February 13, 1998.  He failed to do so, and on July 1, 1998, the Postal Service sent him a "Notice of Separation for Disability," which informed him that he would be separated from the Postal Service within thirty days from the receipt of the notice unless he returned to the same position on the night shift.  In response, Howard filed an additional grievance alleging harassment by the notice of separation.  Howard Dep. at 73.

In October 1999, the Union and the Postal Service entered into a pre-arbitration settlement of both grievances.  They agreed that with respect to the May 1997 grievance, the Postal Service had acted properly, and that with respect to the July 1998 grievance, the outcome of Howard's EEOC action would govern.  Adamski Dep. at 87-90; Second Amended Complaint, Ex. O (October 1999 Pre-Arbitration Settlement).  On March 1, 2002, the EEOC issued an Order

of Judgment, concluding that Howard had failed to make a prima facie showing that he was a qualified individual with a disability, and alternatively, that he failed to show that the Postal Service's legitimate business reason for issuing a notice of separation was pretextual. Def. Mem. Supp. Summ. J., Ex. L (March 1, 2002 Order of Judgment, EEOC Hearing No. 170-A1-8053X, Agency No. 1C-195-0023-98). On March 19, 2002, the agency issued a Notice of Final Action. Howard then filed this action.

## II.      Legal Standard

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for its motion. See Shields v. Zuccarini, 254 F.3d 476, 481 (3d. Cir. 2001). If the movant meets that

burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial." Id.

### III. Analysis

#### A. Count One

Howard contends that the Postal Service discriminated against him by refusing to change his work hours from the night shift to the day shift for an indefinite period of time. As a result, he alleges that he was wrongfully discharged in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. ("Rehabilitation Act").[2] The Postal Service responds that Howard cannot demonstrate that he was "disabled" within the meaning of the Rehabilitation Act and thus cannot make a prima facie showing of discrimination.

> In order for an employee to make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating (1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job. The plaintiff must make a prima facie showing that reasonable accommodation is possible. If the plaintiff is able to meet these burdens, the defendant then bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer.[3]

---

[2] Howard has not specified the provisions of the Rehabilitation Act that the Postal Service allegedly violated. "Federal agencies may, by the terms of the Rehabilitation Act, be sued for violation of either section 501 or 504 of the Act." Spence v. Straw, 54 F.3d 196, 199 (3d Cir. 1995).

[3] The Rehabilitation Act provides that the standards applied to determine whether a violation of the Act has occurred shall be the same standards as under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). 29 U.S.C. §§ 791(g) and 794(d); see McPherson v. Mich. High Sch. Athletics Ass'n, 119 F.3d 453, 459-60 (6th Cir. 1997). Thus, cases construing the ADA are instructive in construing the Rehabilitation Act. Andrews v. State of Ohio, 104 F.3d 803, 807 (6th Cir. 1997).

Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).

First, Howard must make a prima facie showing that he is disabled within the meaning of the Rehabilitation Act. An "individual with a disability" is any person who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705; Sutton v. United Air Lines, 527 U.S. 471, 478 (1999). Howard argues that his depression substantially limited one or more of his major life activities and that the Postal Service regarded him as having an impairment.

An individual is "substantially limited" in performing a major life activity if the individual is:

(i) Unable to perform a major life activity that the average person in the general population can perform; or
(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 762 (3d Cir. 2004) (quoting 29 C.F.R. § 1630.2(j)(1)).

The only major life activity Howard specifies that his depression prevented him from performing is "working." The Supreme Court has explained:

> To be substantially limited in the major life activity of working, . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

Sutton, 527 U.S. at 492; see 29 C.F.R. § 1630.2(j)(3)(i). Here, Howard has not demonstrated that

6

he is unable to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. Rather, all he asserts is that he is unable to perform a specific job position -- letter tray breakdown -- on the night shift. Under well-established precedent, that is not sufficient. See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 644-45 (2d Cir. 1998) (finding that the plaintiff's doctor's imposition of certain restrictions to his work schedule, including that he work days only, was insufficient to establish that he was "substantially limited" in the major life activity of working); Baulos v. Roadway Express, Inc., 139 F.3d 1147, 1153 (7th Cir. 1998) (finding that the inability of truck drivers to work the night shift did not substantially limit them in the major life activity of working); Mont-Ros v. City of West Miami, 111 F. Supp. 2d 1138, 1353 (S.D. Fla. 2000) ("The inability to work a certain shift, without more, is insufficient to constitute a disability."). Howard thus has failed to create a genuine issue of material fact regarding whether he was substantially limited in a major life activity.

Next, Howard contends that the Postal Service "regarded" him as having a disability. A person is "regarded as" having a disability if the person:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
(3) Has [no such impairment] but is treated by the covered entity as having a substantially limiting impairment.

Williams, 380 F.3d at 766 (quoting Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 188 (3d Cir. 1999)).

Howard cites two instances where the Postal Service used language, which, he argues,

demonstrates that it regarded him as having a disability. On February 5, 1998, the Postal Service sent a letter stating "by letter dated January 6, 1998, Dr. M. J. Etezady determined that you have permanent physical restrictions which render you unable to perform the full duties of your position." Also, in a Notification of Personnel Action document dated May 2, 2002, the Postal Service listed the nature of the personnel action against Howard as a "separation disability."

However, these two instances are simply reiterations of Howard's and his doctors' characterizations of his condition and are not admissions on the part of the Postal Service that he had a qualifying disability. Rather, the Postal Service's actions establish the contrary, as evidenced by the options offered to Howard in May 1997 and February 1998. The Postal Service, by offering him different options in various locations and classes of jobs, showed that it did not view his impairment as substantially limiting his ability to work. Howard has thus failed to create a genuine issue of material fact regarding whether the Postal Service regarded him as having a disability.

Accordingly, because Howard has failed to produce sufficient evidence to enable a reasonable fact-finder to determine that he is a disabled person within the meaning of the Rehabilitation Act, the Court will grant summary judgment in favor of the Postal Service on Count One.[4]

**B.    Count Two**

Count Two is a hybrid Section 301 of the Labor Management Relations Act claim, containing allegations against the Postal Service and the Union. Howard contends that the Postal

---

[4] Having reached this conclusion, the Court will not address the Postal Service's arguments that (1) the alleged disability was not permanent or of sufficient duration to constitute a disability and (2) the requested accommodation would have violated the seniority rights of other union members.

Service breached the collective bargaining contract in its handling of his request for a revised schedule and light duty assignment. He also argues that the Union, who is not a party in this action, breached its duty of fair representation in its handling of the grievance proceedings.[5] To succeed on his hybrid claim, Howard must prove both that the Union breached its duty of fair representation and that the Postal Service breached the collective bargaining agreement.[6] See DelCostello, 462 U.S. at 163-65.

In order to show that the Union breached its duty of fair representation, Howard must demonstrate that its actions were either arbitrary, discriminatory, or in bad faith. Vavro v. Gemini Food Mkts., Inc., 39 F. Supp. 2d 553, 559 (E.D. Pa. 1999) (citing Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991) and Vaca v. Sipes, 386 U.S. 171, 190 (1967)). "There must be 'substantial evidence of fraud, deceitful action or dishonest conduct.'" Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge, 403 U.S. 274, 299 (1971)

---

[5] Typically, the employee sues both the employer for breach of the collective bargaining contract and the union for breach of its duty of fair representation. See Vadino v. A.Valey Engineers, 903 F.2d 253, 260 (3d Cir. 1990). Suits like Howard's, in which only the employer is named as a defendant, are permissible under DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 165 (1983). See Vadino, 903 F.2d at 260-61 ("[T]he Supreme Court has viewed the hybrid suit as consisting of two independent, albeit related, causes of action, and has stated that '[t]he employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.'") (quoting DelCostello, 462 U.S. at 165). The Supreme Court has explained that "an allegation that the union had breached its duty of fair representation [is] a necessary component of the § 301 claim against the employer," id. (quotations omitted), because the employee must excuse his failure to exhaust contractual remedies before he can litigate the merits of his § 301 claim against his employer. See Breininger v. Sheet Metal Workers Int'l Ass'n, 493 U.S. 67, 82 (1989).

[6] "Although 39 U.S.C. § 1208(b) grants federal courts jurisdiction [over] disputes arising under collective bargaining agreements executed by the [Postal Service], § 1208(b) is the analogue to section 301(a) of the Labor Management Relations Act, and the law under § 301 is fully applicable to suits brought under § 1208(b)." Gibson v. United States Postal Serv., 380 F.3d 886, 889 n.1 (5th Cir. 2004); see Am. Postal Workers Union v. United States Postal Serv., 222 F. Supp. 2d 675, 677 n.1 (E.D. Pa. 2002).

(quoting Humphrey v. Moore, 375 U.S. 335, 348 (1964)). A union's conduct is arbitrary if it is "so far outside a wide range of reasonableness as to be irrational." Vavro, 39 F. Supp. 2d at 559. On the other hand, a union's conduct is not arbitrary "when it is merely inept or negligent nor does mere disagreement about strategy form a foundation for a § 301 lawsuit." Id.

Here, the Postal Service has introduced undisputed evidence that the Union properly followed the procedures set forth in the collective bargaining agreement. Management representatives met with the local president of the Union and the local administrative vice president in order to reach a resolution on Howard's grievances. These efforts are compelling evidence that the Union did not breach a duty of fair representation. Howard has failed to produce any evidence to show that these actions were negligent, let alone arbitrary, discriminatory, or in bad faith.[7] Accordingly, the Court will grant summary judgment in favor of the Postal Service on Count Two.

## IV.  Conclusion

For the foregoing reasons, the Court will grant the Postal Service's Motion for Summary Judgment. An appropriate Order follows.

---

[7] Howard failed to respond to the Postal Service's arguments with respect to Count Two.

Because Howard fails to satisfy the first of the hybrid Section 301 claim requirements, the Court need not separately consider his allegations that the Postal Service breached the collective bargaining agreement.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID HOWARD** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 02-CV-3797 |
| | : | |
| **JOHN E. POTTER, Postmaster General** | : | |

### ORDER

**AND NOW**, this    15th    day of May, 2006, upon consideration of Defendant's Motion for Summary Judgment (docket no. 30) and Plaintiff's response thereto, it is **ORDERED** that the Motion is **GRANTED** for the reasons stated in the accompanying Memorandum. Accordingly, judgment on all counts is entered in favor of Defendant. The Clerk of the Court shall mark this case **CLOSED**.

BY THE COURT:


 /s/ Bruce W. Kauffman
**BRUCE W. KAUFFMAN, J.**